**PRODUCTOS METALICOS
"AMERICA" S.A.**

v.

**MICROSONIC CORPORATION.**

Civ. A. No. 78–3936.

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1980.

---

Walter R. Milbourne, Philadelphia, Pa., for plaintiff.

Milton S. Lazaroff, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

BECHTLE, District Judge.

This case was tried before the Court, sitting without a jury. The Court invited and received the supplemental memoranda of counsel and proposed findings of fact and conclusions of law. The Court has examined the record, as well as the submitted memoranda, and herein makes the following findings of fact and conclusions of law.

---

## I. *FINDINGS OF FACT*

1. Plaintiff, Productos Metalicos "America" S.A., is a corporation incorporated under the laws of Mexico, with its principal place of business in Mexico City, Mexico.

2. Defendant, Microsonic Corporation, is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

3. The amount in controversy, exclusive of interest and costs, exceeds $10,000.

4. In 1977, plaintiff was in the business of manufacturing watch cases, men's jewelry and jewelry boxes, and had been in such business for approximately 18 to 20 years prior thereto.

5. In 1977, defendant was engaged in the business of manufacturing and trading in electronic watches for worldwide distribution.

6. On October 11, 1976, a meeting took place in the offices of defendant between William A. Hilliard ("Hilliard"), General Manager of defendant, and Leo Kean ("Kean"), President of plaintiff, to explore the possibility of the parties doing business together. Defendant was looking for additional sources of supply of watch cases for its products, and plaintiff was looking for additional customers to purchase watch cases manufactured by it.

7. At the meeting, Hilliard gave to Kean six samples of watch cases currently being manufactured for defendant by existing suppliers [Ex. P–3]. The purpose of this action was to enable defendant to obtain price quotations from plaintiff on said cases, in order that defendant could compare these prices with those from its existing suppliers, and determine if plaintiff's prices were favorable.

8. By letter dated December 29, 1976 [Ex. P–6], plaintiff gave its price quotation on two of the requested items, style numbers 3640 and 3715, and these prices were substantially less than those then being charged defendant by its existing suppliers.

9. On March 1, 1977, Kean met with Hilliard at defendant's offices in Philadelphia.

10. At that meeting, they continued to discuss the possible purchase by defendant from plaintiff of watch cases and Hilliard indicated an interest in doing business with plaintiff in the future.

11. At that meeting, Kean advised Hilliard that his company was a major watch case supplier for Timex and a major portion of plaintiff's production capacity was used for the Timex work. Kean said Timex had cancelled their orders and plaintiff was very seriously hurt financially and, therefore, needed additional business soon.

12. Kean pressed Hilliard for an order, but Hilliard advised him it was not possible for defendant to give him any orders unless defendant had a firm commitment from their customers.

13. At the end of that meeting, Hilliard advised Kean that if they would get a commitment from their customers, they would send plaintiff an order.

14. Kean returned to defendant's offices the next day without an appointment and once again pressed for an order. Hilliard repeated that he did not have any basis for ordering unless he received orders from his customers.

15. Kean then advised Hilliard that, if Hilliard could give him what only appeared to be a purchase order, it would be possible for plaintiff to obtain funds in Mexico and that such order, even though noncommittal to defendant, would be helpful to plaintiff.

16. The precise nature of Kean's financial needs was not clear. In addition, it was not clear to Hilliard what Kean was planning to do with the purchase order in his dealings with Mexican financial institutions.

17. Hilliard did believe, based on Kean's representations, that, due to some unusual practices by financial institutions in Latin America, Kean would be able to derive some sort of financial assistance if he could present a document evidencing an intention by a firm to transact business with Productos Metalicos.

18. Hilliard, based on Kean's representations, believed that the evidence of an intention to transact business did not need to be a binding, enforceable contract or purchase order.

19. Hilliard prepared and executed his standard purchase order form, numbered 000480 ("Order 480") [Ex. P–7], which contained numerous terms but did not contain certain other information.

20. Order 480 stated that the payment terms were to be "90 to 120 days"; that delivery was "F.O.B." the Productos Metalicos plant in Mexico City; and, that the goods were to be shipped to Microsonic in Philadelphia.

21. Under "Quantity," there was listed "5000 pcs" (pieces) for each of four styles of watch cases used by defendant. Under the heading "Net Unit Price," prices were separately listed for the gold and white versions of each style.

22. Order 480 did not list any date for shipment, delivery or order, and there was no statement of what proportion of the 5000 pieces of each style was to be gold or white, even though there was a substantial difference in price between the two colors.

23. Hilliard typed various additional clauses, including the following:

Quantities shown above represent planned initial quantities only, thus are subject to revision, with adequate notification. Details will be confirmed with particular delivery orders.

Tooling schedule is to be provided, allowing approximately 90 days.

Starting samples to be provided by Microsonic, for engineering drawing purposes.

24. Kean and Hilliard understood and agreed that defendant would not be bound by Order 480 unless and until defendant received firm commitments from its customers for the cases in question.

25. Defendant, despite its best efforts, never received any orders for any of the cases in question and, accordingly, never processed any further delivery orders.

26. Order 480 was confirmed by plaintiff in a letter from Kean to Hilliard, with a copy to Leonard Miller ("Miller"), President of Microsonic, dated March 23, 1977 [Ex. P–9].

27. Following the March meeting, plaintiff commenced preliminary work on the tooling and purchased some of the material that would be needed to complete the manufacture of the cases.

28. On or about April 13, 1977, defendant mailed to plaintiff, by air freight, the sample for a certain style of case.

29. The sample was returned, undelivered, by the U.S. Postal Service.

30. On June 1, 1977, Kean again met with Hilliard and Miller in the offices of defendant to discuss potential business dealings between the parties. At that meeting, Kean brought with him a number of samples of cases manufactured by plaintiff, and there was further discussion of the purchase of said cases. Hilliard, on behalf of defendant, prepared a two-page set of notes outlining in writing the substance of the discussion between the parties [Ex. P–16].

31. There was no additional agreement as to the shipment of watches and the parties continued to operate under the assumption that delivery orders would only be sent if the defendant received orders from its customers.

32. At a meeting with Hilliard on June 1, 1977, Kean requested a letter of credit before he would ship any merchandise to defendant.

33. On July 1, 1977, Kean was advised by Hilliard that the defendant would not send him a letter of credit.

34. Kean interpreted Hilliard's statement that defendant would not supply a letter of credit as a cancellation.

35. Kean, on behalf of plaintiff, terminated all business dealings with defendant because defendant would not supply it with a letter of credit for all of the merchandise discussed by the parties.

II. *CONCLUSIONS OF LAW*

1. This Court has jurisdiction over the subject matter of the controversy between

the parties based on diversity of citizenship under 28 U.S.C. § 1332.

2. Order 480 did not constitute a binding contractual agreement. Plaintiff argues that the document is specific enough to constitute an enforceable contract because, under the law of Pennsylvania, in the absence of a stated time for performance, the Court should infer that a "reasonable time" was agreed upon. 12A P.S. § 2–309.

3. The Court need not decide the issue of specificity because it finds that there was no offer-and-acceptance of a contract.

4. The manifest intent of the parties was that Order 480 not be binding until subsequent delivery orders were executed.

5. The manifest intent of the parties was to provide Kean with evidence of an intent to transact business for the purpose of acquiring funds.

6. The intent of the parties, as proven by the testimony of Hilliard, is fully consistent with the written terms of Order 480.

7. No oral or written contract was entered into by the parties at the June 1, 1977, meeting.

8. Defendant is not liable to the plaintiff and judgment will be entered for the defendant.